**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DEBRA S. MIKUS,

                              Plaintiff,

- v -                                                   Civ. No. 6:16-CV-284 (DJS)[1]

NANCY A. BERRYHILL,[2]
*Acting Commissioner of Social Security Administration*,

                              Defendant.

**APPEARANCES:**                                    **OF COUNSEL:**

OFFICE OF PETER W. ANTONOWICZ        PETER W. ANTONOWICZ, ESQ.
*Attorney for Plaintiff*
148 West Dominick Street
Rome, New York 13440

SOCIAL SECURITY ADMINISTRATION        SIXTINA FERNANDEZ, ESQ.
*Attorney for Defendant*
Office of Regional General Counsel
Region II
26 Federal Plaza – Room 3904
New York, New York 10278

**DANIEL J. STEWART**
**United States Magistrate Judge**

### MEMORANDUM-DECISION and ORDER

      In this action, Plaintiff Debra Mikus moves, pursuant to 42 U.S.C. § 405(g), for review of a decision by the Acting Commissioner of Social Security denying her applications for Disability

---

[1] Upon the Plaintiff's consent, the United States's general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 5 & General Order 18.

[2] Nancy A. Berryhill became Acting Commissioner of Social Security on January 23, 2017. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this suit.

Insurance Benefits ("DIB") and Period of Disability ("POD").[3]  Based upon the following discussion, the Acting Commissioner's decision denying Social Security benefits is reversed and the matter is remanded for further proceedings.

## I. BACKGROUND

Mikus, born on May 19, 1962, filed applications for DIB and POD on April 14, 2013, claiming an inability to work as of June 9, 2011, due to a variety of ailments, including depression, fibromyalgia, migraine, and pinched nerve at C5 and L5. Dkt. No. 9, Admin. Transcript [hereinafter "Tr."] at pp. 20, 36, 153-54, & 169. Mikus graduated high school and obtained an associate's degree in business administration. *Id*. at p. 37 & 185. Her past work includes administrative clerk, secretary, school cafeteria cook, and cashier. *Id*. at p. 19.

Mikus's disability application was denied on initial review. *Id*. at pp. 67, 68-76, & 77-82. On September 25, 2014, a Hearing was held before Administrative Law Judge ("ALJ") Lisa B. Martin wherein testimony was procured from Mikus, who was accompanied by an attorney, and from Barry J. Brown, a vocational expert ("VE"). *Id*. at pp. 32-66. On December 22, 2014, ALJ Martin issued an unfavorable decision finding that Mikus was not disabled. *Id*. at pp. 8-25. On February 1, 2016, the Appeals Council concluded that there was no basis under the Social Security Regulations to grant Plaintiff's request for review, thus rendering the ALJ's decision the final determination of the Acting Commissioner. *Id*. at pp. 1–7. Exhausting all of her options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

---

[3] This case has proceeded in accordance with General Order 18, which set forth the procedures to be followed when appealing a denial of Social Security benefits.  Both parties have filed Briefs, though oral argument was not heard. Dkt. Nos. 12, Pl.'s Br., & 13, Def.'s Br.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325–26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla" of evidence scattered throughout the administrative record; rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938); *see also Williams ex. rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "To determine on appeal whether an [Administrative Law Judge's] findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex. rel. Williams v. Bowen*, 859 F.2d at 258.

The Administrative Law Judge ("ALJ") must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d at 258; 42 U.S.C. § 405(g). However, where the weight of the evidence does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

### B.  Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy.  *Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations.  20 C.F.R. § 404.1520.  At Step One, the Commissioner "considers whether the claimant is currently engaged in gainful activity."  *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).  If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends.  20 C.F.R. § 404.1520(b).  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities.  *Id.* at § 404.1520(c).  If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations.  *Id*. at § 404.1520(d).  The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience.  *Berry v. Schweiker*, 675 F.2d at 467.  Where the claimant has such an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity.  *Id*.  If the claimant's impairment(s) does not meet or equal the

listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity ("RFC")[4] to perform his or her past relevant work despite the existence of severe impairments. 20 C.F.R. § 404.1520(e). If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. § 404.1520(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id.*; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. § 404.1520(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C. ALJ Martin's Findings

As noted above, Mikus and VE Brown testified during the Hearing. Tr. at pp. 32-66. In addition to such testimony, the ALJ had Mikus's medical records consisting of treatment reports and opinions from various treating and/or consulting physicians. *Id.* at pp. 239-560.

---

[4] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. § 404.1545(a).

ALJ Martin noted initially that, for DIB purposes, Mikus met the insured status requirements of the Social Security Act through September 30, 2016.[5] *Id*. at pp. 11 & 13. Using the five-step disability evaluation, ALJ Martin found that: (1) Mikus had not engaged in any substantial gainful activity since June 9, 2011, the alleged onset disability date; (2) she has severe medically determinable impairments, namely cervical and lumbar spine disorders, fibromyalgia, hypertension, restless leg syndrome, and obesity; but her hypothyroidism and depression were not deemed to be severe; (3) her severe impairments do not meet nor medically equal any impairment listed in Appendix 1, Subpart P of Social Security Regulation No. 4; (4) she retains the RFC to perform the full range of sedentary work with certain limitations, and, as such, she could not return to any of her prior work; but, (5) considering her age, education, work experience, RFC, VE testimony, and using the Medical-Vocational Guidelines as a framework, Mikus could perform work available in the national economy and was therefore not disabled. *Id.* at pp. 8-25.

### D. Plaintiff's Contentions

In support of her appeal, Plaintiff asserts that the ALJ erred at Step Two when she failed to discuss Plaintiff's migraine headaches and deem it severe. Dkt. No. 12, Pl.'s Br., at pp. 7-10. She also asserts that the ALJ failed to properly analyze the medical evidence and improperly assessed opinion evidence when she failed to give controlling weight to the opinions rendered by her treating physicians.

*1. Step Two – Severity Assessment*

At Step Two, the ALJ must determine whether an individual has an impairment or

---

[5] In order to qualify for DIB, Mikus's disability must have commenced at a time when she met the insured status requirements as provided by the Social Security Act. 42 U.S.C. §§ 423(a)(1)(A) & (c)(1); 20 C.F.R. §§ 404.130 & 404.315(a).

combination of impairments that are severe. 20 C.F.R. § 404.1520. The Second Circuit has warned that the Step Two analysis may not do more than "screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995) (quoted in *de Roman v. Barnhart*, 2003 WL 21511160, at *11 (S.D.N.Y. July 2, 2003)). An impairment is <u>not severe</u> at Step Two if it does not significantly limit a claimant's ability to do basic work activities. 20 C.F.R. § 404.1521(a). The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include,

> (1) Physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b); *see also* Social Security Ruling 85-28, 1985 WL 56856, at *3-4, *Titles II and XVI: Medical Impairments That Are Not Severe* (S.S.A. 1985).

If a claimant has multiple impairments, the combined effect of all impairments should be considered "without regard as to whether any such impairment, if considered separately, would be of sufficient severity." *Id*. at § 404.1523; 42 U.S.C. § 423(d)(2)(B); *see also Schulte v. Apfel*, 2000 WL 362025 (W.D.N.Y. Mar. 31, 2000). "A finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting Social Security Ruling 85-28, 1985 WL 56856, at *3, *Titles II and XVI: Medical Impairments That Are Not Severe* (S.S.A. 1985)). Furthermore, a finding that a condition is "not severe means that the plaintiff is not disabled, and the Administrative Law Judge's inquiry stops at the second level of the five-step sequential evaluation process." *Rosario v. Apfel*, 1999 WL 294727,

at *5 (citing 20 C.F.R. § 404.1520(c)).  If, however, a disability claim "rises above the *de minimis* level, then the further analysis of step three and beyond must be undertaken."  *See de Roman v. Barnhart*, 2003 WL 21511160, at *11 (citing *Dixon v. Shalala*, 54 F.3d at 1030).

As noted above, at Step Two, ALJ Martin determined that Plaintiff had severe impairments, namely, cervical and lumbar spine disorders, fibromyalgia, hypertension, restless leg syndrome, and obesity, but her hypothryroidism and depression were found not to be severe.  Tr. at pp. 13-14.  At this point in the ALJ's decision, there is no mention that Plaintiff suffers from migraine headaches, despite the fact that Plaintiff regularly sought treatment for this diagnosed condition and several treatment modalities have been pursued by her treatment providers, including prescribing medication, testing, and referrals.  *Id*. at pp. 284, 286, 295, 314, 349-51, 353, 363, 396, 435, 440-41, 448, 449, 480, 484, 487, 493, 497, 499, & 511.  Nevertheless, later in the decision when the ALJ formulated Plaintiff's RFC, the ALJ explicitly considered Plaintiff's subjective complaints regarding the limiting effects of her headaches as well as the treatment notes and medical opinions concerning the same.  *Id*. at pp. 15-19.  Because the ALJ determined that certain of Plaintiff's conditions were severe, including her cervical spine disorder which has contributed, in part, to her headaches, and in doing so, continued the sequential disability evaluation, and because ALJ Martin clearly considered the headache disorder later in her opinion, I find that the omission of a discussion regarding Plaintiff's headaches at Step Two was harmless and thus find no reversible error with regard to this aspect of the ALJ's decision.  *See Tryon v. Astrue*, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) ("Often when there are multiple impairments, and the ALJ finds that only some of the impairments, but not others, are severe, any error in the severity analysis is harmless because the ALJ continues with the sequential analysis, and does not deny plaintiff's application based on the

second step alone" (citation omitted)).

## *2. Weighing Medical Opinions*

Plaintiff asserts that the ALJ improperly assessed the Plaintiff's treating provider's opinions, presumably as it relates to the ALJ's RFC determination.

The Commissioner assesses a claimant's RFC as a basis for determining the particular types of work the claimant may be able to do despite the existence of physical and/or mental impairments. *See* 20 C.F.R. § 404.1545(a); 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(c). In qualifying work in the national economy, the Regulations classify and define jobs according to their physical exertion requirements as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567. In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the plaintiff's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. *Id*. at § 404.1545(a).

In this action, when assessing Plaintiff's RFC, the ALJ reviewed the medical record and opinion evidence and determined that Mikus had the

> residual functional capacity to perform a full range of light work as defined in 20 CFR 404.1567(b),[6] except the claimant needs the opportunity to change positions as often as every 30 minutes for one to two minutes. The claimant must avoid all climbing of ladders, ropes, and scaffolding, and is limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling.

---

[6] The Social Security Regulations define light work as follows:
Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
20 C.F.R. § 404.1567(b).

> Additionally, the claimant must also avoid all overhead reaching, dangerous work hazards (including unprotected heights and exposed machinery), and extreme heat, humidity, and cold temperature conditions.  Because of pain distractions causing on[e] to two minute off task behavior hourly preventing detailed decision making, the claimant is limited to routine, simple tasks not requiring a fast assembly quota pace.

Tr. at p. 14.

In rendering this RFC, the ALJ found Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her impairments to be not entirely credible. *Id*. at p. 16. Primarily, the ALJ found that Plaintiff's description of symptoms and limitations throughout the record is "inconsistent and unpersuasive." *Id*. By way of example, the ALJ noted that the Plaintiff testified that her conditions had worsened over the last year and a half, yet the medical records reveal that Plaintiff "remained pretty active[e] and continued to work." *Id*.

As for opinion evidence, the ALJ discussed the medical record and the various medical opinions included thereto and assessed the weight to the various medical opinions as follows: 1) little weight was afforded to the opinions of Terry Smith, NP, Anne-Marie Edmunds, PA, and Timothy Failing, D.C., each of whom are treatment providers for Plaintiff; 2) some weight was afforded to the opinions of Lev Goldiner, M.D., and Anne Chmielewski, RPA-C, both treatment providers for Plaintiff; 3) little weight was given to the consultive examination findings reported by Cheryl Loomis, Ph.D., and Tanya Perkins Mwantuali, M.D., who are each agency consultive examiners; and 4) significant weight was given to an unamed State agency psychological consultant's assessment. *Id*. at pp. 18-19.

While the Plaintiff renders a general objection to the ALJ's assessment of the evidence, her argument focuses on two errors in particular:  1) the ALJ's failure to adopt, and provide an explanation for not adopting, the limitations opined by Dr. Goldiner; and 2) the ALJ's over-reliance

on rote notations contained in the medical records from Ivan Antonevich, M.D., also one of Plaintiff's treating physicians. Pl.'s Br. at pp. 10-13.

Under the Regulations, a treating physician's opinion as to the nature and severity of a claimant's impairment is entitled to "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999).[7] However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1527(e)(1) (Commissioner provides the ultimate decision on disability). The treating physician doctrine recognizes that a claimant's treating sources, which in most cases are medical professionals, are more apt to "provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical findings" as opposed to an evaluation of a one-time non-examining, non-treating physician. 20 C.F.R. § 404.1527(d)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993).

In analyzing a treating physician's opinion, "the ALJ cannot arbitrarily substitute his [or her] own judgment for competent medical opinion." *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983); *see also Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998). Furthermore, when weighing all medical opinions and assessing what weight to accord, "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof" are

---

[7] A "treating physician" is the claimant's "own physician, osteopath or psychologist (including outpatient clinic and health maintenance organization) who has provided the individual with medical treatment or evaluation, and who has or had an ongoing treatment and physician-patient relationship with the individual." *Jones v. Apfel*, 66 F. Supp. 2d 518, 524-25 (S.D.N.Y. 1999) (quoting *Schisler v. Bowen*, 851 F.2d 43, 46 (2d Cir. 1988)).

considerations. *Schisler v. Sullivan*, 3 F.3d at 568; 20 C.F.R. § 404.1527(d)(1)-(6); *see also Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998). In the event the ALJ does not give controlling weight to the treating physician's opinions, he must specifically state the reasons for doing so. 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d at 32. Failure to apply the appropriate legal standards for considering a treating physician's opinion is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of a treating physician's opinion. *Johnson v. Bowen*, 817 F.2d 983, 985-86 (2d Cir. 1987); *see also Barnett v. Apfel*, 13 F. Supp. 2d 312, 316-17 (N.D.N.Y. 1998).

In addition to the extensive medical treatment reports, the Record also contains several medical source statements, including two Headaches Questionnaires, one completed by Dr. Goldiner (Tr. at pp. 558-60), and one by RPA Chmielewski (Tr. at pp. 239-42), both of whom are associated with the Slocum-Dickson Medical Group.[8] In reviewing the medical evidence of record, the ALJ summarized the two Headache Questionnaires as follows:

> Due to the claimant's migraines, both providers indicated that the claimant will need to take unscheduled breaks during an[] eight hour day . . . . Ms. Chmielewski opined the claimant will need the break two times a week while Dr. Goldiner opined that the claimant will need breaks one to three times a day resting 30 to 60 minutes before returning to work . . . . Dr. Goldiner went on to opine that the claimant will miss about three to four days o[f] work a month and cannot perform any heavy lifting . . . . Ms. Chmielewski concluded by opining the claimant must avoid noise, chemical, fumes, and dust . . . .

Tr. at p. 18 (internal citations omitted).

The ALJ stated she gave these opinions "some weight" in that Dr. Goldiner's limitation of no heavy lifting was incorporated into the RFC by limiting Plaintiff to light work activity. Tr. at p. 19. Ms. Chmielewski's limitation regarding avoidance of noise, chemicals, fumes, and dust does not appear

---

[8] Several of Plaintiff's other treatment providers are also associated with the Slocum-Dickson Medical Group, including Dr. Antonevich.

*-12-*

to have been accepted because there were no "reports of headaches from these triggers." *Id*. There is no further discussion of the other limitations noted by these treatment providers.

While the Defendant acknowledges that a specific and full discussion of the remainder of these opinions is lacking, she urges the Court to "glean the ALJ's rationale" for not fully adopting these assessments based upon the ALJ's evaluation of the assessments from NP Terry Smith, PA Anne-Marie Edmunds, and Chiropractor Timothy Failing. Def.'s Br. at p. 9. The Court declines this invitation. Notably, Ms. Smith, Ms. Edmunds, and Mr. Failing, as a nurse practitioner, physician's assistant, and chiropractor, respectively, are not amongst the list of acceptable medical sources in the Regulations such that their opinions would be entitled to controlling weight. Thus, I cannot equate the ALJ's assessment of their opinions with the assessment of Dr. Goldiner's opinions. 20 C.F.R. § 404. 1513(a) & (d)(1); *see also, e.g., Colondres v. Barnhart*, 2005 WL 106893, at *6 n. 97 (S.D.N.Y. Jan. 18, 2005) (noting that a physician's assistant "is not an acceptable medical source and such opinion is never entitled to [controlling] weight" as is afforded to a treating physician).

As a treating physician, Dr. Goldiner's opinions are entitled to controlling weight unless such opinions are not supported by medically acceptable clinical laboratory diagnostic techniques and is inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). While the Acting Commissioner seems to argue that Dr. Goldiner's opinions are not, in fact, supported, this does not absolve the ALJ from her obligation to explain the reasons for giving less weight to such opinions. Here, ALJ Martin failed to explain why of the remainder of the assessments rendered by Dr. Goldiner regarding the limiting effects of Plaintiff's migraines, with the exception of the lifting limitation, was wholly rejected. This is particularly important where, if the limitations assessed by

Dr. Goldiner regarding missed work were adopted, a disability conclusion may have been rendered at Step Five because the VE testified, upon questioning by the ALJ, that missing two or more days of work per month would eliminate the availability of work. Tr. at pp. 63-64. Similarly, upon questioning by Plaintiff's attorney, the VE acknowledged that if the claimant had to be off task more than ten percent of the time at work, all jobs would be eliminated from consideration. *Id.* at pp. 64-65. In assessing Plaintiff's limitations resulting from her migraines, Dr. Goldiner opined that Plaintiff would need unscheduled breaks one-to-three times per day, which would last for thirty-to-sixty minutes, and she would likely be absent three-to-four times per month. *Id*. at pp. 559-60. The ALJ's RFC accommodation "for simple routine tasks due to off task behavior due to the claimant's pain" does not address Dr. Goldiner's limitations.

Because the ALJ failed to specifically explain why Dr. Goldiner's (and to some extent Ms. Chmielewski's) assessments were disregarded, and because she failed to employ the correct legal principles of the Treating Physician Rule, a reversal of her decision of non-disability is warranted. *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000) *superceded by regulation on other grounds* ("Upon a finding that an administrative record is incomplete or that an ALJ has applied an improper legal standard, we generally . . . remand the matter to the Commissioner for further consideration." (citation omitted)). Accordingly, because the ALJ failed to properly assess Plaintiff's treating physician's opinions in assessing Plaintiff's RFC, the Court need not – indeed, cannot – reach the question of whether the Acting Commissioner's denial of benefits was based on substantial evidence. The case should be remanded to the Acting Commissioner to further develop the record.

Moving on to Plaintiff's second specific argument, it seems that the Plaintiff objects to the ALJ having afforded little weight to the opinions rendered by Ms. Smith, Ms. Edmunds, and Mr.

Failing based, in part, on the treatment notes from Dr. Antonevich, one of Plaintiff's treating physicians. Pl.'s Br. at pp. 11-12. Here, the ALJ determined that the limitations assessed with regard to Plaintiff's pain as a cause for problems with concentration and missed work, was given little weight because "objective findings do not support why the claimant is in significant pain." Tr. at p. 18. And to support this finding, the ALJ cites to Dr. Antonevich's records which "regularly indicate that the claimant reported she is independent in activities of daily living, is able to comfortably sit for 15 minutes, comfortably stand for over 120 minutes, comfortably lift 10 pounds, is able to pick up objects from the floor comfortably, and walk without having to stop more than half a mile." *Id*. The Court does not accept Plaintiff's argument that certain portions of Dr. Antonevich's treatment notes should have been disregarded by the ALJ because "[i]t is obviously a cut and paste carry over from one visit to the next without any evidence that the subject matter was even inquired into by the author of the note." Pl.'s Br. at p. 11. It would be incongruous for me to find fault with the ALJ's decision to elevate the treatment notes from an acceptable medical source over the opinions of non-acceptable sources, especially where, as noted by the Defendant, the daily activities described in Dr. Antonevich's treatment notes, even if appearing to be a "cut and paste carry over" are consistent with Plaintiff's reporting of her daily activities to the Social Security Administration. *See* Tr. at pp. 196-205 (indicating that Plaintiff cared for her daily needs, prepared meals (breakfast daily and dinner on occasion), performed errands and chores such as grocery shopping and doing the laundry (sometimes with the aid of family members), watched television, read, occasionally knit, and do puzzles). Thus, I find no error was committed when the ALJ relied upon Dr. Antonevich's treatment notes in discounting certain opinions contained in the record. Notwithstanding, because the matter is being remanded, the ALJ should, in assessing the Plaintiff's

RFC, reconsider all opinion evidence of record and determine the proper weight accorded thereto.

Having assessed Plaintiff's specific objections, I note that it is not entirely clear the precise contours of the Plaintiff's remaining arguments, though it appears to be a general objection to the ALJ's overall analysis of the medical record. Although the Plaintiff does not specifically raise the issue of ALJ's consideration of her fibromyalgia as a source of pain, in light of her general objection to the ALJ's assessment of the evidence, and in light of the errors identified above as it pertains to the ALJ's consideration of certain opinion evidence, the Court will address the ALJ's conclusion that there is a lack of objective evidence to support Plaintiff's allegations of pain.

In *Green-Younger v. Barnhart*, the Second Circuit acknowledged that "fibromyalgia is a disabling impairment" which "eludes . . . measurement" through objective medical evidence because there are "no objective tests which can conclusively confirm the disease." 335 F.3d 99, 108 (2d Cir. 2003) (citations omitted); *see also Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 44-45 (2d Cir. 1991). As the Second Circuit aptly noted,

> [i]n stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results-a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather, it is a process of diagnosis by exclusion and testing of certain "focal tender points" on the body for acute tenderness which is characteristic in fibrositis patients.

*Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d at 45 (citation omitted); *see also The Merck Manual* 481 (17th ed. 1999) (noting that fibromyalgia is recognized by certain "typical" symptoms and through exclusion of other diseases).

Thus, an ALJ should not reject a treating physician's fibromyalgia diagnosis or refuse to give the treating physician's opinion controlling weight based upon a lack of objective evidence. *Green-Younger v. Barnhart*, 335 F.3d at 108. Nor may the ALJ "arbitrarily substitute his own judgment for competent medical opinion." *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799

(2d Cir. 1983); *see also Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998).

Here, the ALJ found that Plaintiff's fibroymyalgia was a severe impairment at Step Two, but in reviewing the medical evidence in order to assess her RFC, the ALJ seemed to focus only on the lack of a fibromyalgia diagnosis in 2010 and 2011. Tr. at pp. 13 & 16-17. There seems to be a focus on the notion that Plaintiff was never diagnosed with fibromyalgia by Allan Smiley, M.D., and upon seeking treatment from Sherin Varkey, M.D., the Plaintiff's reporting that she has fibromyalgia was simply adopted, and perhaps that is the sole source of Plaintiff's fibromyalgia diagnosis. *Id.* at pp. 16-17. There is no real discussion of the Plaintiff's condition and the treatment she received as it relates to this condition, and indeed ,there is a sweeping and persistent dismissal of Plaintiff's complaints of pain because of the lack of objective evidence to support the basis for her pain. This is precisely what the Second Circuit has warned against whenever fibroymalgia is at play. *See Green-Younger v. Barnhart*, 335 F.3d at 108 (noting that in cases of fibromyalgia, physical examinations usually yield normal results). Furthermore, in cases dealing with fibromyalgia, "the credibility of the claimant's testimony regarding [his] symptoms takes on substantially increased significance in the ALJ's evaluation of the evidence[.]" *Coyle v. Apfel*, 66 F. Supp. 2d 368, 376 (N.D.N.Y. 1999) (internal quotation marks and citation omitted).

Having determined that a remand is appropriate in this matter, the ALJ shall, in addition to the above, analyze the Plaintiff's fibromyalgia and assess what limiting effects, if any, result thereto. In making this assessment, it may be necessary for the ALJ to obtain statements from Plaintiff's treating physicians in order to confirm when, if at all, she had been diagnosed with fibromyalgia and what the limiting effects are upon her ability to perform work activities. The Plaintiff's credibility regarding the intensity, persistence, and limiting effects of her symptoms, including pain, shall also

be reassessed.

## III. CONCLUSION

In light of the above, I find that ALJ did not apply the correct legal principles and thus remand is appropriate. **WHEREFORE**, it is hereby

**ORDERED**, that the Acting Commissioner's decision denying disability benefits is **REVERSED** and this matter be **REMANDED** to the Acting Commissioner, pursuant to Sentence Four of 42 U.S.C. § 405(g), for further proceedings consistent with the above; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties to this action.

**SO ORDERED.**

Date: April 7, 2017
        Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge